State *v.* Van Waggoner.

---

## THE STATE *against* VAN WAGGONER.

Indians may be slaves under the laws of New Jersey; what shall be considered as sufficient proof of slavery.

---

This was a *habeas corpus*, which had issued to bring up the body of Rose, an Indian woman, claimed by the defendant as a slave.

Brown, whose affidavit was read, swore that he knew the mother of Rose, who was an Indian woman, and lived with one Vangeson. Vangeson, never within his knowledge, claimed her as a slave, but called her a North Carolina squaw. Another witness testified to facts tending to prove the mother an Indian.

· On the part of the defendant, it was proved that the mother was purchased as a slave, and had continued in that capacity for fifty-five years; that both mother and daughter were considered as slaves, and stated by the person under whom the defendant claimed to be such.

*Elisha Boudinot*, for the prosecution. However variant the testimony of the witnesses may be upon other points, they all agree that the mother of the prisoner was an Indian. This fact, which is not denied, furnishes at least *prima facie* evidence of her being free. The slavery of the unfortunate wretches who have been transported from Africa, however discordant it may be with the fundamental principles of our religion and our policy, has been so long recognized that greater evils would ensue from giving them liberty, than from retaining them in their state of servitude. But no views of policy authorize the slavery of the aborigines of this country. It is impossible to render them slaves under our laws, and the proof of being an Indian is equivalent to proof of freedom.

At any rate, the court will not permit persons of this description to be detained as slaves, without the most unequivocal proof that this is their actual state. When a negro, detained as a slave, claims his freedom, he is bound to prove the fact that he is free; the presumption of the law is the other way. In the case however, of an Indian, he must always be presumed free, and strong evidence ought

to be required to overturn this presumption. The question then is, whether the testimony in this case is sufficient to authorize the court to say, that the prisoner is legally a slave.

*M'* *Whorter* and *R. Stockton,* contra. The first principle upon which this application is made, appears to be founded in error. The argument is, that proof of being an Indian is equivalent to proof of freedom; but Indians are recognized as slaves, by various acts of the legislature of this state, and in Pennsylvania the law is precisely the same. They are placed upon the same footing with Africans, and, when being detained as slaves, they prefer a claim for their freedom, they are bound to prove a right to be liberated. In the "act for regulating of slaves," passed March 11, 1713–14, (*Allinson* 18) they are coupled with negroes : every section of that act uses the words "negro, Indian or mulatto slave." In the act of May 10, 1768, (*Ib.* 307) regulating the trial of slaves for murder and other crimes, the same language is used. And in the "act laying a duty on the purchasers of slaves imported into this colony," passed November 16, 1769, (*Ib.* 315) no discrimination is made between negroes and Indians. The slavery of Indians, therefore, by our laws, stands precisely upon the same footing, and is to be governed by the same rules as that of Africans. From the case of *Pirate* v. *Dalby,* (1 *Dall.* 167) it appears that our law is similar to that of Pennsylvania, in this respect. It will be difficult then, to draw the line, and to prescribe a certain degree of proof in one case, and a greater degree of it in another, as requisite to establish the same facts. It would be introducing a new law, to say that less testimony shall be required to establish the slavery of an Indian than of a negro.

But these considerations are not absolutely essential in this case, and, even admitting the doctrine that has been contended for, it is conceived that the proof of the slavery

of the mother of Rose, and of Rose herself, has been as precise as any that could be given in any case. The loose evidence that is opposed to it, would scarcely warrant the court in giving freedom to a person who, with her mother, has been held and considered as a slave for so great a length of time.

KINSEY, C. J. delivered the opinion of the court.

The *habeas corpus* in this case, seems to have been sued out under the supposition that an Indian could not be a slave under our laws. But this idea is contradicted by various acts of assembly, some of which have been cited on the argument, and indeed it cannot be urged with any shew of reason. They have been so long recognized as slaves in our law, that it would be as great a violation of the rights of property to establish a contrary doctrine at the present day, as it would in the case of Africans; and as useless to investigate the manner in which they originally lost their freedom.

With regard to the proof in this case, that which has been adduced on the part of the state appears to have been almost exclusively founded upon the supposition which I have already shewn to be erroneous. The defendant has proved, that the mother of Rose was purchased as a slave many years ago; that for upwards of fifty years the mother and daughter have been held as slaves, and no claim for freedom was ever thought of before the year 1796. The slender circumstances and vague expressions on the other side are insufficient to overturn this testimony. We therefore think that the slavery of Rose has been sufficiently proved, and that she must be remanded to the custody of her master.

NOTE.—The question as to the slavery of Indians, has on several occasions come before the courts of Virginia,

and the doctrines which have been held there are liberal, and honorable to the respectable judges by whom they have been delivered. In *Jenkins* v. *Tom,* 1 *Wash.* 123; *Coleman* v. *Dick, Ib.* 233; *Hudgins* v. *Wright,* 1 *Hen. and Munf.* 123; *Pallas* v. *Hill.* 2 *Hen. and Munf.* 149, it is laid down, that when an Indian is claimed as a slave, the *onus probandi* is thrown upon the claimant. The slavery of Indians was, in that state, founded upon an express act of assembly, in the year 1679, which declared Indian prisoners, taken in war, to be slaves. This act was repealed in 1691, and it is now held that no native American Indian brought into Virginia since 1691, could under any circumstances be lawfully made a slave.